UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY A SUTTON,<br><br>                    Plaintiff,<br><br>          v.<br><br>WELLS FARGO BANK, N.A.,<br><br>                    Defendant. | Case No.  21-cv-01695-SVK<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION, DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS, AND DISMISSING ACTION**<br><br>Re: Dkt. Nos. 12, 13, 15, 16, 18, 20 |

On April 30, 2021, Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") filed a motion to dismiss Plaintiff Jimmy A. Sutton's ("Plaintiff") Complaint (Dkt. 12) and a motion to compel arbitration (Dkt. 13). The Parties have consented to the jurisdiction of the undersigned magistrate judge. Dkts. 9, 10.

The Court held a hearing on June 22, 2021 only as to the motion to compel arbitration. Dkt. 23. After considering the Parties' submissions, arguments at the hearing, the case file, and relevant law, and for the reasons discussed below, the Court **GRANTS** Defendant's motion to compel arbitration, **DENIES AS MOOT** Defendant's motion to dismiss, and **DISMISSES** this action.

## I.     BACKGROUND

Plaintiff has been a customer of Wells Fargo, a national banking association, for at least 24 years. Dkt. 1 ¶¶ 7, 12. Plaintiff previously had a Wells Fargo "Portfolio" checking account. *Id.* ¶ 14. This account allowed Plaintiff to maintain his account without paying a monthly service fee due to the monetary value of his balances with Wells Fargo, which included a percentage of his home loan mortgage balance. *Id.* ¶¶ 13-14. After Plaintiff's mortgage was transferred to another

United States District Court
Northern District of California

1    company, Wells Fargo informed Plaintiff that he no longer qualified for a fee waiver and began

2    charging him a monthly service fee of $30.  *Id.* ¶¶ 15-16.  Wells Fargo recommended that Plaintiff

3    should switch from the Portfolio account to an "Everyday Checking Account" to reduce monthly

4    service fees, which Plaintiff did in February 2019.  *Id.* ¶ 17.  Wells Fargo requires Everyday

5    Checking Account accountholders to pay a $10 monthly service fee, maintain a $500 minimum

6    daily balance, have "qualifying" direct deposits automatically deposited to the checking account,

7    or link the checking account to a Wells Fargo "Campus ATM card" or "Campus Debit card."  *Id.* ¶

8    19.  Plaintiff alleges that Wells Fargo waives these requirements for accountholders who are

9    between the ages of 17 and 24 years old.  *Id.* ¶ 20.  Plaintiff alleges that he was 74 years old at the

10   time that he switched to the Everyday Checking Account, and Wells Fargo has regularly charged

11   him the monthly service fee.  *Id.* ¶ 21.  Plaintiff further alleges that he has repeatedly complained

12   regarding this practice, and Wells Fargo has refunded some, but not all, of the service fees paid by

13   Plaintiff.  *Id.* ¶ 22.

14       Plaintiff alleges that this practice of charging higher monthly service fees to customers

15   with Everyday Checking Accounts who are older than 24 years old is discriminatory, arbitrary,

16   and unlawful.  *Id.* ¶¶ 25-27.  On March 10, 2021, Plaintiff filed this putative class action, alleging

17   several claims: (1) violation of the Unruh Civil Rights Act; (2) for public injunctive relief as

18   private attorney general under Business and Professions Code § 17203; and (3) violation of the

19   unfair competition law.  Plaintiff seeks to represent a state-wide class consisting of all persons

20   who (1) maintained Everyday Checking Accounts with Wells Fargo during the class period

21   beginning four years prior to the filing of this action and continuing until this matter is resolved or

22   the class is certified; (2) were charged monthly checking account service fees by Wells Fargo that

23   were higher than the fees they would have been charged if they were 24 years old or younger; and

24   (3) paid at least one such fee during the class period and while residing in California.  *Id.* ¶ 29.

25       As stated above, Defendant filed a motion to dismiss Plaintiff's Complaint (Dkt. 12) and a

26   motion to compel arbitration (Dkt. 13).  Defendant states that when Plaintiff's account was

27   converted into an Everyday Checking account in February 2019, he would have been provided

28   ////

with the operative Deposit Account Agreement.[1]  Dkt. 13 at 7-8; Dkt. 13-1 Declaration of Karen Nelson ("Nelson Decl.") ¶ 6; Dkt. 13-4 Ex. C.  The Deposit Account Agreement contains provisions requiring arbitration of disputes between Plaintiff and Wells Fargo ("Arbitration Agreement").  Dkt. 13 at 8.  The Deposit Account Agreement was amended on July 24, 2019 and on November 9, 2020.  *Id.*; Nelson Decl. ¶ 7; Dkts. 13-5-13-6 Exs. D-E.  In relevant part, the Arbitration Agreement that was in place at the time the Complaint was filed states:

> **Resolving disputes through arbitration (Consumer accounts only)**
>
> **Arbitration   Agreement   between   you   and   Wells   Fargo**
>
> If you have a dispute, we hope to resolve it as quickly and easily as possible.  First, discuss your dispute with a banker.  If your banker is unable to resolve your dispute, you agree that either Wells Fargo or you can initiate arbitration as described in this section.
>
> **Definition:** Arbitration means an impartial third party will hear the dispute between Wells Fargo and you and provide a decision.  Binding arbitration means the decision of the arbitrator is final unenforceable.  A dispute is any unresolved disagreement between Wells Fargo and you.  A dispute may also include a disagreement about this Arbitration Agreement's meaning, application, or enforcement.
>
> **Wells Fargo and you each agrees to waive the right to a jury trial or a trial in front of a judge in a public court.**  This Arbitration Agreement has only one exception: Either Wells Fargo or you may still take any dispute to small claims court.
>
> ….
>
> **Can either Wells Fargo or you participate in class or representative actions?**
>
> **No, neither Wells Fargo nor you will be entitled to join or consolidate disputes by or against others as a representative or member of a class, to act in any arbitration in the interests of the general public, or to act as a private attorney general.**
>
> If any provision related to a class action, class arbitration, private attorney general action, other representative action, joinder, or consolidation is found to be illegal or unenforceable, the entire Arbitration Agreement will be unenforceable.

---

[1] While the Parties refer to the agreement containing the Arbitration Agreement as the "Consumer Account Agreement," the Court will use the title of the document, "Deposit Account Agreement." Dkts. 13-4-13-6 Exs. C-E.

3

**What rules apply to arbitration?**

Wells Fargo and you each agrees that

- The American Arbitration Association (AAA) will administer each arbitration and the selection of arbitrators according to the AAA's Consumer Arbitration Rules (AAA Rules).
- If there are any differences between the AAA Rules and this Arbitration Agreement, this Arbitration Agreement applies. If this Arbitration Agreement is in dispute, the arbitrator will decide whether it is enforceable.

….

**Important legal information**

….

**What courts may be used to resolve a dispute?**

Wells Fargo and you each agree that any lawsuits, claims, or other proceedings arising from or relating to your account or the Agreement, including the enforcement of the Arbitration Agreement and the entry of judgment on any arbitration award, will be venued exclusively in the state or federal courts in the state whose laws govern your account, without regard to conflict of laws principles.

Dkt. 13-6 Ex. E at 8, 13.

Defendant argues that Plaintiff's claims, including the question of arbitrability, are subject to the

Arbitration Agreement. Plaintiff opposes the motion for several reasons, which are discussed in

detail below.

## II.      REQUEST FOR JUDICIAL NOTICE

### A.      Legal Standard

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not

subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir.

2018), *cert. denied sub nom. Hagan v. Khoja*, — U.S. —, 139 S.Ct. 2615, 204 L.Ed.2d 264 (2019)

(citing Fed. R. Evid. 201(b)). A fact is "not subject to reasonable dispute" if it "is generally

known" or "can be accurately and readily determined from sources whose accuracy cannot

reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). "A court may take judicial notice of

'matters of public record' without converting a motion to dismiss into a motion for summary

judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *MGIC Indem.*

1  *Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).  However, "[j]ust because the document

2  itself is susceptible to judicial notice does not mean that every assertion of fact within that

3  document is judicially noticeable for its truth."  *Khoja*, 899 F.3d at 999.

4       **B.      Analysis**

5       Plaintiff asks the Court to take judicial notice of the Order Re: Motion to Compel

6  Arbitration and Stay Litigation in *Wallace v. Wells Fargo & Co. et al.*, No. 2017-1-CV-317775,

7  which was filed in the Superior Court of California, County of Santa Clara.  Dkt. 16-2, Ex. A.  The

8  Court "may take judicial notice of court filings and other matters of public record."  *Reyn's Pasta*

9  *Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Accordingly, the Court

10 **GRANTS** Plaintiff's request for judicial notice of the Order Re: Motion to Compel Arbitration

11 and Stay Litigation.

12 **III.    MOTION TO COMPEL ARBITRATION**

13      **A.      Legal Standard**

14      The Federal Arbitration Act ("FAA") provides that an agreement to submit commercial

15 disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds as

16 exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see also AT&T Mobility*

17 *LLC v. Concepcion*, 563 U.S. 333, 336 (2011).  "A party to a valid arbitration agreement may

18 'petition any United States district court . . . for an order directing that such arbitration proceed in

19 the manner provided for in such agreement.'"  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363

20 F.3d 1010, 1012 (9th Cir. 2004) (quoting 9 U.S.C.§ 4).  Courts have developed a "liberal federal

21 policy favoring arbitration agreements."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460

22 U.S. 1, 24 (1983).  Under this presumption in favor of arbitration, a court should not deny an order

23 to arbitrate "unless it may be said with positive assurance that the arbitration clause is not

24 susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc. v. Commc'ns*

25 *Workers of Am.*, 475 U.S. 643, 650 (1986).  Thus, a district court's role under the FAA is limited

26 to determining two "gateway" issues: (1) whether an arbitration agreement exists; and (2) whether

27 the agreement encompasses the dispute at issue.  *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,

28 207 F.3d 1126, 1130 (9th Cir. 2000).  If the party seeking arbitration establishes these two factors,

United States District Court
Northern District of California

5

1  the Court must compel arbitration.  9 U.S.C. § 4; *see Chiron*, 207 F.3d at 1130.

2      Further, "parties may agree to have an arbitrator decide not only the merits of a particular

3  dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to

4  arbitrate or whether their agreement covers a particular controversy."  *Henry Schein, Inc. v. Archer*

5  *and White Sales, Inc.*, 139 S.Ct. 524, 529 (2019) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561

6  U.S. 63, 68-69 (2010) (internal quotation marks and citation omitted)).  Although questions of

7  arbitrability are presumptively for the courts to decide, "parties may delegate threshold

8  arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and

9  unmistakable' evidence."  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2, 133 S. Ct.

10  2064, 186 L. Ed. 2d 113 (2013); *Henry Schein*, 139 S.Ct at 530 (quoting *First Options of Chicago,*

11  *Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920 (1995)).  "When the parties' contract delegates

12  the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied

13  in the contract."  *Henry Schein*, 139 S.Ct. at 528.

14      **B.    Analysis**

15          **1.    Delegation of Arbitrability**

16      Defendant argues that Plaintiff entered into a valid agreement to arbitrate with Wells Fargo

17  when he accepted the Deposit Account Agreement.  Dkt. 13 at 10.  Defendant also contends that

18  Plaintiff's claims fall within the scope of the Arbitration Agreement, including the "gateway"

19  issue of whether a dispute is arbitrable.  *Id.* at 10-11.  Defendant points to the language in the

20  Arbitration Agreement that states that an arbitrator will decide "any unresolved disagreement

21  between Wells Fargo and you," including "a disagreement about this Arbitration Agreement's

22  meaning, application, or enforcement."  *Id.* at 11; Nelson Decl. ¶ 7; Dkt. 13-6 Ex. E at 8.

23  Defendant asserts that because "the Arbitration Agreement unmistakably delegates questions of

24  arbitrability to the arbitrator," "any questions as to the Arbitration Agreement's scope or

25  enforceability should be decided by the arbitrator, rather than this Court."  *Id.* at 11.

26      Plaintiff counters that Wells Fargo's Arbitration Agreement does not "clearly and

27  unmistakably" delegate questions regarding enforceability to the arbitrator.  Dkt. 16 at 8-14.  The

28  Court addresses Plaintiff's arguments in turn below.

United States District Court
Northern District of California

### a.      Delegation provision

In *Wilson v. Wells Fargo & Co.*, the Honorable Dana M. Sabraw, in the Southern District of this state, considered the exact same Deposit Account Agreement and Arbitration Agreement now in front of this Court.  No. 20-cv-2307-DMS-WVG, 2021 WL 1853587, at *1 (S.D. Cal. May 10, 2021).  Judge Sabraw found the Arbitration Agreement, in particular the definition section, to be sufficient, concluding that "the parties agreed to arbitrate gateway issues of arbitrability." *Wilson*, 2021 WL 1853587, at *3.  It is with this guidance in mind that this Court takes its own careful look at the Arbitration Agreement.  Under the definition section, the Arbitration Agreement first defines arbitration, stating that "[a]rbitration means an impartial third party will hear the dispute between Wells Fargo and you and provide a decision" and then defines "[b]inding arbitration."  Dkt. 13-6 at 8.  Next, the definition section defines a dispute as "any unresolved disagreement between Wells Fargo and you."  *Id.*  The Arbitration Agreement then provides examples of what a dispute may cover, stating that it "a dispute may also include a disagreement about this Arbitration Agreement's meaning, application, or enforcement."  *Id.*

Plaintiff contends that the word "may" in the last phrase of the definition section is fatal to Defendant's argument, because it "does not require that the arbitrator hear disputes about enforcement of the Arbitration Agreement or give the arbitrator exclusive jurisdiction over them." Dkt. 16 at 10.  In support of this argument, Plaintiff relies upon a recent California appellate court decision, *Wilson-Davis v. SSP Am., Inc.*, 62 Cal. App. 5th 1080 (2021).  *Id.*  The Court does not find *Wilson-Davis* persuasive.  In that case, the appellate court considered an arbitration provision which set forth that the parties "may" submit unresolved grievances in arbitration, but "nowhere suggest[ed] that unresolved grievances 'must' be submitted to arbitration."  *Wilson-Davis*, 62 Cal. App. 5th at 1091 (emphasis omitted).  The permissive "may" in *Wilson-Davis* is in the sole provision upon which the defendant in that case relied to compel arbitration.  Here, the definition section defines what an arbitration is ("an impartial third party will hear the dispute between Wells Fargo and you and provide a decision"), defines what a dispute is ("any unresolved disagreement"), and then provides exemplars of disputes ("may also include a disagreement about this Arbitration Agreement's meaning, application, or enforcement").  Dkt. 13-6 at 8.  The use of

United States District Court
Northern District of California

1   the term "may" in a statement of examples does not, as Plaintiff suggests, undermine the

2   delegation to an arbitrator of issues regarding the agreement's application or enforcement.

3   Further, as Defendant raised in its reply and Parties addressed at oral argument, the delegation of

4   arbitrability is clearly and unmistakably restated on the same page of the Arbitration Agreement,

5   "[i]f this Arbitration Agreement is in dispute, the arbitrator will decide whether it is enforceable."

6   Dkt. 13-6 Ex. E at 8.  Accordingly, the Court finds that the language used in the Arbitration

7   Agreement provides clear and unmistakable evidence that the Parties intended to submit the

8   question of arbitrability to the arbitrator.

9                              **b.      Venue provision**

10          Plaintiff also argues that there is a conflict between the language that Defendant proffers as

11   the delegation provision and the venue selection clause in the "Important Legal Information"

12   section.  Dkt. 16 at 11-12.  Plaintiff asserts that because the "Important Legal Information" section

13   states that enforcement of the Arbitration Agreement can be brought in state or federal court, the

14   Arbitration Agreement does not clearly and unmistakably delegate questions regarding

15   enforceability to the arbitrator.

16          In *Mohamed v. Uber Technologies*, the Ninth Circuit noted that the district court had

17   determined that the venue provision was "inconsistent and in considerable tension with the

18   language of the delegation clauses." 848 F.3d 1201, 1209 (9th Cir. 2016) (citing *Mohamed v. Uber*

19   *Technologies, Inc.*, 109 F. Supp. 3d 1199, 1201 (N.D. Cal. 2015)).  However, in re-evaluating the

20   district court's reasoning, the Ninth Circuit found that "[t]hese conflicts are artificial."  *Id.*  "As for

21   the venue provision, the California Court of Appeal has observed that '[n]o matter how broad the

22   arbitration clause, it may be necessary to file an action in court to enforce an arbitration

23   agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to

24   invoke the jurisdiction of a court to obtain other remedies.'"  *Id.* (citing *Dream Theater, Inc. v.*

25   *DreamTheater*, 124 Cal. App. 4th 547, 21 Cal. Rptr. 3d 322, 328 (2004), *as modified on denial of*

26   *reh'g* (Dec. 28, 2004)).  Similar to the venue provision in *Mohamed*, "[i]t is apparent that the

27   venue provision here was intended for these purposes, and to identify the venue for any other

28   claims that were not covered by the arbitration agreement."  *Id.*  Accordingly, the Arbitration

Agreement clearly and unmistakably delegates the question of arbitrability to the arbitrator and the venue provision in the Deposit Account Agreement does not conflict with the Arbitration Agreement's delegation provision.

### 2. Applicability of *McGill*

Because the Court finds that the Parties have delegated the question of arbitrability to the arbitrator, the Court need not reach the arguments related to the possible applicability of *McGill*.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion to compel arbitration, **DENIES AS MOOT** Defendant's motion to dismiss, and **DISMISSES** this action without prejudice.  *See Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988).

**SO ORDERED.**

Dated: June 29, 2021

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

9